

Shawn Southerland
516654E/739978
1-R-3-171/E.J.S.P.
1100 Woodbridge Road
Lock Bag-R
Rahway, N.J. 07065

January 8, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHAWN SOUTHERLAND, | : | CIVIL ACTION  NO. 25-cv-976 JHR-GWG |
| | : | |
| Plaintiff, | | |
| | : | : |
| | : | PLAINTIFF'S OPPOSITION TO |
| V. | : | MOTION FOR SUMMARY AND/OR |
| | : | MOTION TO DISMISS Fed. R. Civ. P.,56 |
| | : | & Fed. R. Civ. P., 12 |
| ALVIN L. BRAGG, JR., NEW | : | |
| YORK COUNTY DISTRICT, *et. al.*,: | | |
| | :. | |
| Defendants, *et. al.*, | : | |
| ------------------------------------------------X | | |

### RELIEF SOUGHT

Plaintiff, Shawn Southerland, <u>pro se</u>, for the complaint for access to judicial documents pursuant to the First Amendment to the United States Constitution[1] replies to Defendant's motion for Summary Judgment and/or Motion to Dismiss filed and served by the defendant in this action and shows that the defendant is not entitled to a summary judgment for all the following reasons:

### I. THE SHOWING ON THE MOTION IS INSUFFICIENT

In order to obtain summary judgment, the defendant must establish both that there is no genuine dispute as to any relevant fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The defendant's showing as to these matters is defective because:

---

[1]All reference to "judicial documents" relates to plaintiff's request for access to judicial documents under the First Amendment to the United States Constitution.

1

1.    The first defect in motion papers depends on establishing, as an undisputed fact, that the plaintiff's claim under First Amendment right to access judicial documents is governed by New York Freedom of Information Law ("FOIL"). See Defendant's Statement of Undisputed Facts, ¶ 14, 15 ,16, 17, 18, 19, 20, 21, 29, 30, 31, 38, 39, 42, 43, 44. The defendant's omit the fact that each one of plaintiff's documents request included a request pursuant to the First Amendment U.S.C.A. See, Plaintiffs appendix ECF No. 49. The defendant's argument that the court does not have subject matter jurisdiction relies upon a showing that plaintiff also cited FOIL in his records access requests, and that plaintiff lacks Article III standing. See, Defendants Motion to Dismiss at pp. 12, and 23.

Rather than engage in any discovery, and proper investigation of the case file in question, the defendant brought this premature motion relying on inherently unreliable records to establish this fact. The declaration submitted by Dafna Yoran, Esq. (Yoran) of DANY is based merely upon her "recollection" as lead prosecutor in the Daniel Penny (Penny) prosecution, that Jordan Neely (Neely), mental health and criminal records do not predate 2012 See Defendant's (Exhibit-K).[2]

As set forth herein infra, it appears Yoran did not conduct a thorough investigation into, and acquiring the full disclosure of a case file and relied merely upon her 'recollection' which is flawed. In this case, Plaintiff informed Corey S. Shoock, Esq. DAG of DANY that when he previously asserted this claim by Yoran, that an affidavit must be sworn regarding the reported mental health history and criminal records of Jordan Neely. Yoran's "recollections" are not insufficient to establish the facts related to the documents Plaintiff seeks that are under seal pursuant to N.Y. CPL 160.50. The civilaction of plaintiff seeks judicial documents under First Amendment.

---

[2]"Exhibit-K" refers to the Declaration of Dafna Yoran, Esq. (Yoran) of DANY attached hereto.

2

The defendants argument under FOIL only, is offered to distract from the fact they waived the issue, since in their responses, to the plaintiffs records request and responses to the administrative appealsnever addressed plaintiff's request under First Amendment. See, Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment included with this submission.

In the declaration of Yoran as the "lead" prosecutor appointed some 15-months after the May 1, 2023 death investigation began sometime in August 2024. See, Exhibit-K, paragraph 6. Here, Yoran relies upon recollections, and there are no other affidavits to substantiate what secretaries, paralegals, lawyers or office clerks who obtained the records and prepared the Daniel Penny case for trial. Yoran merely alleges that she "recollects." (Neely), mental health and criminal records do not predate 2012. This so-called recollection of the mental health and criminal records claim establishes the lack of persuasiveness of this evidence, as the plaintiff's Motion to Strike this declaration shows. Therefore, this court cannot establish that Yoran is not a competent witness even for the limited purposequalifying these records as admissible to warrant summary judgment or dismissal for failure to state a claim,SeeFed. R. Evid. 806.

Assuming arguendoonly, Yoran's declaration that, she has personal knowledge, of the mental health and criminal history of Neely does not predate 2012, plaintiff submits that this defect in her declaration makes it unreliable based upon her "recollection."Therefore, Plaintiff submits, this creates a genuine issue of material facts in dispute warranting the denying of defendant's motion for summary judgment and/or dismiss for failure to state a claim.

2. The defendant's alternate ground for summary judgment is the claimed failure to establish personal involvement by the individual defendants; the failure to state a First Amendment or Common Law Right of Access Claim; Plaintiff cannot maintain an action under FOIL; Defendants are immune, and DANY cannot be sued, See, Defendants Memorandum of Law at

Point II, pp. 17 to 28. For the sake of brevity and judicial economy plaintiff relies upon his opposition papers filed with the clerk See, ECF No. 47,48,49,50, regarding the defendant's arguments related to these claims.

## II. Plaintiff's Motion to Strike Declaration of Dafna Yoran Should Be Granted

" 'An affidavit or declaration used to support or oppose a motion for summary judgment' must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

However, Declarations, "often do not rest entirely on personal knowledge, and it is expected that some advocacy will appear' as it is expected that the declaration will be used for the purpose of introducing documents or other evidence into the record."Degelman Indus. Ltd. v. Pro-Tech Welding and Fabrication, Inc., No. 06-CV-6346T, 2011 U.S. Dist. LEXIS 147953, 2011 WL 6752565, at *4 (W.D.N.Y. Dec.23, 2011). "'The principles governing admissibility of evidence do not change on a motion for summary judgment,' and 'only admissible evidence' may be considered by the district court." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); see also Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009). 'Because the purpose of summary judgment is to weed out cases in which there is no genuine issue as to any material fact ... it is appropriate for districts courts to decide questions regarding the admissibility of evidence on summary judgment.' Id. (internal quotations and citations omitted).

Courts may consider any material usable or admissible at trial when considering a summary judgment motion. Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012); see Raskin, 125 F.3d at 65 (noting that a district court 'has broad discretion in choosing whether to admit evidence' on a motion for summary judgment.)

Indeed, the purpose of summary judgment is to allow courts to 'pierce the pleadings' and

4

access admissible evidence to 'determine whether there are genuine issues to be tried.' Lemelson v. Carolina Enters. Inc., 541 F. Supp. 645, 648 (S.D.N.Y.1982)."

Rather than strike an offending declaration or attorney's affirmation, "courts considering a motion for summary judgment are free to disregard the improper portions, independently review the record, and consider only that which is admissible," 2015 U.S. Dist. LEXIS 131583, [WL] at *3 (citations omitted). A court may strike under Rule 56(e) "portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements,"Hollander v. American Cyanamid, 172 F.3d 192, 198 (2d Cir. 1999), abrogated on other grounds, Schnabel v. Abramson, 232 F.3d 83, 89 (2d Cir. 2000) (prima facie case standard abrogated).

In the Motion to Strike Plaintiff's objects to Dafna Yoran, Esq, (Yoran), DANY Attorney Declaration. In this regard, Plaintiff argues that the Attorney's Declaration contains inadmissible evidence (hearsay, unauthenticated evidence) and legal arguments inappropriately raised in a declaration. Plaintiff submits, that Yoran submitted the Declaration but lacked personal knowledge of the factual assertions made therein (See, Yoran Declaration, Exhibit-K, id. at 6).

Plaintiff submits that the attorney's Declaration merely recollects facts and legal positions asserted in other opposing papers. The one fact stated in the Declaration that is Jordan Neely mental health and criminal records are in possession of DANY, or she has access to them. Yoran contends that she has personal knowledge of the status and of these documents, but reiterates her recollection. In addition, Yoran fails to submit additional affidavits or declarations in support of her personal knowledge contention, and recollections. Given the heavy burden to establish a motion to strike and that such motions are disfavored, Akpoke v. City of N.Y., No. 15-CV-6960, 2019 U.S. Dist. LEXIS 19383, 2019 WL 46930342, at *2 (E.D.N.Y. Feb. 6, 2019), Plaintiff concludes that

unless Yoran provides additional evidence, and exhibits, and/or subject herself to interrogatories, this motion should be granted.

In this case, the Yoran Declaration did not contain citations to the record despite repeating assertions made in other DANY opposition papers by Corey S. Shoock, Esq., Deputy General. Again, the Declaration merely repeats legal arguments fleshed out in the Memorandum of Corey S. Shoock, Esq. This Court is exercising its discretion should disregard the repeated legal arguments contained in the Declaration and consider the arguments as raised in Plaintiff's Memorandum of Law.

Moreover, Yoran's Declaration is cumulative of allegations and assertions Memorandums submitted by Corey S. Shook, Esq papers and could be disregarded on that basis.

## III. THERE ARE GENUINE DISPUTES AS TO MATERIAL FACTS

For the sake of brevity and judicial economy Plaintiff incorporates, his Statement of Material Facts in Dispute filed with the clerk (ECF No. 50), as all were fully set forth herein at length. (See Exhibit-A), attached hereto. Therefore, summary judgment must be denied based upon disputes as to material facts.

As argued infra plaintiff also filed appendix exhibits[3] with the clerk in his initial opposition brief ( See, ECF No. 49), opposing summary judgment and motion to dismiss which are incorporated by reference of a type of which the court may take judicial notice. For example:

1. Plaintiff's June 22, 2023 FOIL Request to N.Y.S. Division of Criminal Justice Services Jordan Neely Criminal History, Exhibit-A;

2. July 17, 2023 Division of Criminal Justice Services Response to Plaintiff's Criminal Record Request for Jordan Neely, Exhibit-B;

---

[3] Plaintiff asks the court to take judicial notice of the documents already on file with the court under ECF No. 49

3. Plaintiff's Appeal of Criminal Record Request denial dated August 2, 2023, for Jordan Neely Criminal Records Exhibit – C; \

4. Division of Criminal Justice Services Response to Appeal denial dated August 2, 2023 for Jordan Neely Criminal Records Exhibit – D;

5. Plaintiff's FOIL & **Judicial Document** Request to New York County District Attorney (DANY) Dated September 25, 2023 for Jordan Neely Records Exhibit – E;

6. DANY October 2, 2023 Response to FOIL Request only indicating resubmit after the prosecution concludes Exhibit – F;

7. Plaintiff's Appeal of denial of FOIL & **Judicial Records** Request dated October 6, 2023; Exhibit – G;

8. DANY Response to Appeal of denial of FOIL & **Judicial Records Request** dated October 20, 2023 Exhibit – H;

9. Hon. J. Machelle Sweeting, J.S.C. Order denying Request Without Prejudice indicating Resubmit after Penny Prosecution concludes dated May 16, 2024 Exhibit – I;

10. Plaintiff's January 13, 2025 Resubmission of FOIL & **Judicial records request** Exhibit – J;

11. Plaintiff's January 13, 2025 Resubmission of FOIL &**Judicial Records Request** Jordan Neely Documents Exhibit –K

12. Plaintiff's February 21, 2025 Follow-Up Resubmission of FOIL &**Judicial Records Request** Jordan Neely Documents/Exhibit attached; Exhibit – L;

7

13. DANY March 3, 2025 Response indicating to Plaintiff file a motion to unseal Based upon CPL 160.50; Exhibit – M;

14. Plaintiff's Appeal dated March 11, 2025 to Madeleine Guilmain, Esq. DANY General Counsel; Exhibit – N; (Emphasis added)

## IV. THE COURT HAS JURISDICTION OVER PLAINTIFF'S FIRST AMENDMENT JUDICIAL DOCUMENT RECORDS ACCESS REQUEST: DEFENDANT WAIVED HIS CLAIM FOR FAILURE TO ADDRESS THE ISSUE IN THEIR RESPONSES TO PLAINTIFF'S SUBMISSIONS AND APPEALS

For the sake of brevity and judicial economy, Plaintiff incorporates his opposition brief arguments and supporting appendix filed with the clerk See, ECF No. 49 as all were fully set forth herein at length, with the exception of addressing defendants claim's in their brief at Point I, A & B, and pp. 12-16.

As a threshold matter, plaintiff claims that the DANY waived any privilege it may have had to these documents by failure to address the First Amendment claim at the records access administrative proceedings. This argument is based on plaintiff's contention that the DANY made the claim, the court lacks subject matter jurisdiction, a claim that was not made when plaintiff made his requests to the records access officer, and the administrative appeals officer, See Exhibits attached to PRO SE PLAINTIFF'S RESPONSE TODEFENDANT'S MOTION FOR SUMMARYJUDGMENT/MOTION TO DISMISS, EXHIBITS –A to J. Therefore, Plaintiff's claims are not barred  because plaintiff did not continually pursue Article 78,relief (Responding DANY'S Point III, & IV contentions at page(s) 29 to 32).

Plaintiff contends that DANY'S failure to address his claims presented under First Amendment waives all objections to plaintiff pursuing his First Amendment Judicial Records action in this court for the following reasons. Plaintiff First Amendment right to common law

8

access to judicial documents as indicated in the exhibits set forth herein and as stated infra were fairly presented to DANY, and they failed to pass on the issue only, addressing the claim as a "FOIL" request, when clearly both the First Amendment and FOIL are cited in the requesting papers exhibits. Moreover, it would make a much cleaner argument for the defendant, if they had not used these very same documents exhibits in their moving papers.

## V. PLAINTIFF HAS STATED A CLAIM FOR RELIEF AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Because summary judgment is a drastic remedy, a party seeking summary judgment bears a heavy burden: Rule 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."Brown v. Eli Lilly &Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor." 'Wright, 554 F.3d at 266 (parenthetically quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

To defeat a motion for summary judgment, he opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated speculation."F.D.I.C. v. Great Am. Ins. Co., 607 F.3d

288, 292 (2d Cir. 2010) (internal quotation marks omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v Continental Grp., Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). The plaintiff's exhibits attached to his initial brief in opposition (ECF No. 49), and incorporated herein by reference (ECF No. 4,49, and 50), establish that there are genuine issues of material fact that exist to preclude summary judgment for defendants.

As set forth above and stated infra, Plaintiff has attached documentation his "Pro Se" Response, as Exhibits- A to J, establishing there is a genuine is of material fact that precludes Summary Judgment for defendant, DANY.

## VI. PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED UNDER RULE 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."Id. at 663.

In addition, the Court is obligated to construe the submissions of pro se litigants like Plaintiff liberally "to raise the strongest arguments they suggest."Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)); see generally McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 158 (2d Cir. 2017). See also,Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").

In considering a motion to dismiss, the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as Plaintiff's arrest reports, indictments, and criminal disposition data. See Kramer v. Time Warner Inc., 937 F.2d 767, 773-75 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); see also Awelewa v. New York City, No. 11 Civ. 778 (NRB), 2012 U.S. Dist. LEXIS 24244, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) (judicial notice may be taken of arrest reports, criminal complaints, indictments, and criminal disposition data (citing Wims v. N.Y.C. Police Dep't, No. 10 Civ. 6128 (PKC), 2011 U.S. Dist. LEXIS 78641, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011))). Where the Court takes judicial notice, it does so "in order to determine what statements [the public records] contained ... not for the truth of the matters asserted. "Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphases omitted) (quoting Kramer, 937 F.3d at 774).

11

## VII. <u>FIRST AMENDMENT RIGHT OF ACCESS</u>

Plaintiff maintains, he has a "federal constitutional right of access to certain types of state judicial records."<u>McCrary</u>, 2018 U.S. Dist. LEXIS 150183, 2018 WL 4204244, at *3 (citing <u>Hartford Courant Co. v. Pellegrino</u>, 380 F.3d 83, 86 (2d Cir. 2004).

Plaintiff argues that mental health information and criminal records of Neely was the basis of the defense utilized by Penny to convince the jury to acquit Penny of any wrongdoing in the death of Neely.  The documents presented and/or relied upon as evidence in the Penny case initiates the judicial process, and/ was relied on by the jurors when making its decision. As a result, Plaintiff respectfully submits, the requested information is a judicial document subject to a presumption of access, and precluding the dismissal under Fed. R. Civ. P., 12

In this Circuit, the Court of Appeals explained, "the notion the public should have access t the proceedings and documents of courts is integral to our system of government." <u>United States v. Erie County</u>, 763 F.3d 235, 238-39 (2d Cir. 2014), "indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." Id.at 239. To constitute a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." <u>Amodeo I,</u> 44 F.3d at 145.

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." <u>Lugosch,</u> 435 F.3d at 119. According to the Second Circuit, the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.The Court explained that, "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their

irrelevance."Amodeo II, 71 F.3d at 1049. When a document plays a role in a court's adjudication of litigants' substantive rights-a function that is "at the heart of Article III"-the presumption is strong, but "as one moves along the continuum, the weight of the presumption declines." Id

The Court explained that "Courts must exercise judgment to determine the weight to be accorded to "statements or documents in the middle of the continuum," and that "judgment can be informed in part by tradition." Id.at 1049-50. For example, when "documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." Id.at 1050.Third, the court must balance any "competing considerations" against the weight of the presumption of access. Lugosch, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'"Id(quoting Amodeo II, 71 F.3d at 1050); accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 143 (2d Cir. 2016). When weighing privacy interests, court should consider "the degree to which the subject matter is traditionally considered private rather than public." Amodeo II, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" but also to "how the person seeking access intends to use the information. Id. at 1051 (explaining that "commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts").

Pursuant to the First Amendment, "right of access stems from the qualified right of the public and the press to attend judicial proceedings and to access certain judicial documents." Lugosch, 435 F.3d at 120 (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)). In this case, plaintiff made clear the type of documents and information he is seeking from

13

the Daniel Penny case file is related to Jordan Neely only, the access to certain transcripts relevant to the Penny prosecution, such as opening and closing statements of the parties, expert testimony of the parties, and affidavits verifying that these records are true and correct from DANY. Plaintiff also seeks any motions filed by the parties relevant to evidentiary issues related to Jordan Neely mental health history and criminal history. Because DANY declined to engage in any discovery, there is no way to determine the veracity Counsel Yoran's declaration, DANY's Exhibit-K.Rather, defendants moved to stay discovery until after the court decides the pending motions to dismiss and/or summary judgment.

## VIII. DANY IS A SUABLE ENTITY

In Lehman v. Kornblau, the Plaintiff sued the District Attorney of Nassau County, individually and in her official capacity as an Assistant District Attorney of Nassau County, DENNIS E. DILLON, individually and in his official capacity as District Attorney of Nassau County, FRANCIS D. QUIGLEY, individually and in his official capacity in the Nassau County District Attorney's Office, ROBERT L. EMMONS, individually and in his official capacity in the Nassau District Attorneys Office, RODOLFO BARRIO, individually and in his official capacity as a Nassau County Police Officer, JOSEPH MOLINELLI, MARY FLYNN, COUNTY OF NASSAU, and the UNITED STATES POSTAL SERVICE, Defendant(s).206 FRD 345206 F.R.D. 345; 2001 US Dist LEXIS 244342001 U.S. Dist. LEXIS 24434; CV - 99-6517 (ADS)(WDW) (September 24, 2001, E.D.N.Y.), and the court determined that sealed records ordered to be unsealed and defendants were ordered to submit proper privilege logs for alleged privilege documents.

In this regard, the court granted the Pro Se doctor's request to unseal documents that had been sealed pursuant to N.Y. Crim. Proc. Law § 160.50. Noting that, if the defendants thought any

14

items were privileged, they were ordered to file a proper privilege log.

### IX.  THEhe Court Should Vacate the Order Staying Discovery and Order The Penny Case Unsealed

It is well-settled that, Federal courts commonly order production of documents sealed pursuant to N.Y. Crim. Proc. Law §§ 160.50 or 160.55, particularly where the documents are cleansed of the names and other identifying information of non-party arrestees. The worthy goals of §§ 160.50 and 160.55 as well as a litigant's need for pertinent discovery can usually be honored simultaneously by redaction of information that identifies, directly or indirectly, persons entitled to protection under these statutes.

To that end, plaintiff has established a sufficient need to obtain items constituting factual judicial documents, records regarding trial transcripts opening, and closing statements, expert testimony and motions of evidentiary value which contain information about Jordan Neely, his mental health history, and criminal history, including summaries of facts, statements related to this inquiry, as well as the trial court docket sheet in People of the State of New York v. Daniel Penny, 72890-23; N.Y. County Indictment.

In Cruz v. Kennedy, although the court denied the victim's request for the officer's medical records, the police were required to produce the relevant part of the medical records that related to the arrest. The remainder of the medical records were to be produced for an in camera review. The other requested documents and records were produced with restrictions or were subject to an in camera review for a decision on the extent to which they would be produced. 1998 US Dist. LEXIS 155991998 U.S. Dist. LEXIS 15599; 97 Civ. 4001 (KMW)(HBP) (September 30, 1998S.D.N.Y.)

15

## CONCLUSION

For all of the reasons set forth above, the plaintiff requests that the defendant's motion for summary judgment and/or to dismiss the action be denied. The opposition is based on this document, and (ECF No. 47-to 50), on file with the clerk on the response to the defendant's Motion(s) for Summary Judgment and to Dismiss described above, including the exhibits attached to those declarations, all of which are served and noted with this opposition of a type in which this Court may take Judicial Notice. Fed. R. Evid. Rule 201.

Respectfully submitted,

x

Shawn Southerland
Plaintiff, Pro Se

Dated: January 8, 2026
Rahway, N.J. 07065

# DANY'S EXHIBIT-K
## Declaration of Dafna Yoran

EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

SHAWN SOUTHERLAND,

                                    Plaintiff,

              -against-

ALVIN L. BRAGG, JR., NEW YORK COUNTY DISTRICT
ATTORNEY; FRANKLIN R. GUENTHNER, ESQUIRE
NEW YORK COUNTY DISTRICT ATTORNEY CIVIL
LITIGATION UNIT ROBIN MCCABE, ESQUIRE, NEW
COUNTY DISTRICT ATTORNEY CIVIL LITIGATION
UNIT, HANNAH ROCHE FOIL COORDINATOR, NEW
YORK COUNTY DISTRICT ATTORNEY OFFICE,

                                    Defendants.

------------------------------------------------------------------- x

**DECLARATION OF
DAFNA YORAN**

25 Civ. 976 (JHR) (GWG)

**DAFNA YORAN** declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury and the

laws of the United States of America, that the following is true and correct:

1. I submit this Declaration based upon my personal knowledge and familiarity with the records

    discussed herein.

2. I am currently employed by the New York County District Attorney's Office ("DANY" or

    "this Office") as an Assistant District Attorney ("ADA").

3. I have been employed as an ADA at DANY since September 1993.

4. Among my duties and responsibilities as an ADA, I am assigned as a Senior Trial Counsel in

    DANY's Trial Division.

5. As part of my duties and responsibilities as a Senior Trial Counsel in DANY's Trial Division,

    I prosecute homicides that occur within the confines of New York County.

6. In August 2024, I was assigned to take over as the lead prosecutor of Daniel Penny for causing

    the death of Jordan Neely ("Neely") aboard the "F" train subway in New York County on or

    about May 1, 2023.

1

7. On June 28, 2023, Daniel Penny was arraigned in New York State Supreme Court on manslaughter and related charges pursuant to Indictment No. 72890-23NY, arising from the criminal investigation into the death of Neely ("the Penny prosecution").

8. Pursuant to my duties and responsibilities as lead prosecutor in the Penny prosecution, I was obligated to review and familiarize myself with the records obtained by DANY pursuant to the criminal investigation into Neely's death and the Penny prosecution.

9. Pursuant to the Penny prosecution, this Office received records concerning Neely's mental health history and his criminal history.

10. As the lead prosecutor assigned to the case, I reviewed both the mental health records and criminal history pertaining to Neely that DANY received pursuant to the Penny prosecution.

11. Daniel Penny's homicide trial began in October of 2024.

12. Daniel Penny's homicide trial ended on December 9, 2024, in an acquittal of Daniel Penny on all charges.

13. Pursuant to New York Criminal Procedure Law ("CPL") § 160.50, the entirety of the Daniel Penny Prosecution file was sealed upon Daniel Penny' s acquittal.

14. In approximately March 2025, I informed ADA Madeleine Guilmain, whom I understood to be serving as the Freedom of Information Law ("FOIL") Appeals Officer in connection with a request made by Shawn Southerland, that based upon my recollection of the records of the Penny prosecution, DANY did not obtain any mental health records or criminal history records concerning Neely which dated to the year 2012 or earlier.

15. Pursuant to CPL § 160.50, I am forbidden by state law from accessing DANY's records of the Penny prosecution.

2

16. To the best of my present recollection based upon my familiarity with the records concerning the criminal investigation into the death of Neely and Penny prosecution, DANY did not obtain and does not possess any mental health records or criminal records concerning Neely which date to the year 2012 or earlier.

Dated: New York, New York
October 22, 2025

Dafna Yoran

3